UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MAZEL LLC,<br><br>        Plaintiff,<br><br>   - against –<br><br>REDDY ICE HOLDINGS, INC., REDDY ICE CORPORATION; ARCTIC GLACIER INCOME FUND; ARCTIC GLACIER, INC.; ARCTIC GLACIER INTERNATIONAL, INC. AND HOME CITY ICE COMPANY, INC.,<br><br>        Defendants | Index No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

  Plaintiff Mazel LLC, by its undersigned attorneys, individually and on behalf of the class described below, brings this action against the defendants named herein for treble damages and other relief under the antitrust laws of the United States. Plaintiff demands a trial by jury of all issues so triable, and complains and alleges as follows:

### NATURE OF THE ACTION

  1.  This is an alleged class action on behalf of all individuals and entities who purchased Packaged Ice in the United States directly from defendants, their predecessors or their controlled subsidiaries from at least as early as January 1, 2002 to at least March 5, 2008 (the "Class Period"). As used herein, "Packaged Ice" refers to ice in cubed, half moon, cylindrical, or crushed forms which is packaged in small bags (primarily 7 and 10 pounds), as well as ice in blocks.

2. Plaintiff alleges that during the Class Period, the defendants engaged in a combination and conspiracy, the purpose and effect of which was to allocate markets and customers and to artificially fix, raise, maintain or stabilize the price of Packaged Ice sold in the United States. As a result of this illegal combination or conspiracy, defendants were able to charge supra-competitive prices for Packaged Ice sold in the United States to plaintiff and members of the class.

3. On or about March 7, 2008, it was disclosed that agents of the United States Department of Justice executed a search warrant and subpoenaed documents and other materials from certain defendants in connection with an investigation into anticompetitive conduct in the Packaged Ice industry.

4. According to the annual report, dated March 14, 2008, of defendant Reddy Ice Holdings, Inc., the company received subpoenas issued by a federal grand jury seated in the Eastern District of Michigan. Specifically, the annual report disclosed:

> In March 2008, we and certain of our employees, including members of our management, received grand jury subpoenas issued from the U.S. District Court for the Eastern District of Michigan seeking information in connection with an investigation by the Antitrust Division of the United States Department of Justice ("DOJ") into possible antitrust violations in the packaged ice industry. In addition, on March 5, 2008, federal officials executed a search warrant at our corporate office in Dallas, Texas. We expect to make available documents and other requested information to the DOJ's Antitrust Division in connection with the investigation. The subpoenas we and our employees received are part of a broader industry inquiry; at least one other packaged ice manufacturer has also received such a subpoena. Senior management is not aware that the Company has engaged in anticompetitive behavior, or other activities, which would violate the antitrust laws. On March 6, 2008, our Board of Directors formed a special committee of independent directors to conduct an internal investigation of these matters. The special committee's investigation is ongoing and the outcome of the investigation is unknown. The special committee has hired special counsel to assist in its investigation.

5. According to a press release by Arctic Glacier Income Fund dated March 9, 2008: "The Company is in receipt of a subpoena requiring production of documents. The U.S. Department of Justice has requested cooperation in the production of any such documents and information located outside of the U.S. that may assist in the investigation. Arctic Glacier plans to comply with the subpoena's request for information and documents in the U.S. and expects to cooperate in providing relevant information and documents that may be located in Canada."

## JURISDICTION AND VENUE

6. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 for treble damages and other relief, including reasonable attorneys' fees and costs of suit, for defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8. Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b) and (c) because, during the Class Period, one or more of the defendants resided, transacted business, was found, or had agents in this district and because a substantial part of the events giving rise to plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## INTERSTATE TRADE AND COMMERCE

9. During the Class Period, defendants produced, manufactured, distributed and sold Packaged Ice through the means of interstate commerce in a continuous and uninterrupted flow to customers located throughout the United States.

10. Defendants' activities which are at issue in this action were within the flow of and substantially affected interstate trade and commerce.

3

**PLAINTIFF**

11.     Plaintiff Mazel LLC ("Mazel") is a Delaware Corporation located in Hicksville, New York.  Mazel is a special event production company that produces, among other things, carnivals, concerts and parades.  Mazel also supplies party rentals such as chairs, tables and tents to its customers. During the Class Period, Mazel purchased Packaged Ice directly from one or more of the defendants and was damaged as a result.

12.     Specifically, Mazel purchased packaged ice from The Diamond Ice Cube Company, Inc. ("Diamond"), located at 556 River Ave, Bronx, New York.  In July 2003, defendants Arctic Glacier Income Fund and Arctic Glacier Inc. established a substantial presence in the New York City region with the acquisition of all of the issued and outstanding common shares of Springdale Ice Company of Mamaroneck, New York, which operates under the name Saxony Ice and its affiliated company Diamond Ice Cube Company Inc. of the Bronx, New York.

**DEFENDANTS**

13.     Defendant Reddy Ice Holdings, Inc. ("Reddy Holdings") is a corporation organized under the laws of the State of Delaware with its principal place of business at 8750 North Central Expressway, Suite 1800, Dallas, Texas 75231.  Reddy Holdings is the parent of its wholly-owned subsidiary, defendant Reddy Ice Corporation ("Reddy Corp.").  Reddy Corp. is a Delaware corporation with its principal place of business at 8750 North Central Expressway, Suite 1800, Dallas, Texas 75231.  Hereafter Reddy Holdings and Reddy Corp will be referred to collectively as "Reddy Ice."  Reddy Ice is the largest manufacturer and distributor of Packaged Ice in the United States, serving approximately 82,000 customer locations in 31 states and the District of Columbia under the Reddy Ice brand name.  For the year ended December 31, 2006,

4

Reddy Ice sold approximately 1.9 million tons of ice, and had sales of just under approximately $340 million in 2007.  Reddy Ice's products are primarily sold throughout the southern United States (Florida, Georgia, South Carolina, North Carolina, Tennessee, Kentucky, Alabama, Mississippi, Louisiana, Arkansas, Texas, Oklahoma, Arizona, New Mexico), as well as the mid-Atlantic (Virginia, West Virginia, Maryland, Pennsylvania, Delaware and New Jersey) and far West states, including (Washington, Oregon, Idaho, Nevada, Utah, Wyoming and Colorado).

14.     Defendant Arctic Glacier Income Fund ("Arctic Fund") is a Canadian company with its principal place of business at 625 Henry Avenue, Winnipeg, Manitoba R3A 0V1.  Arctic Fund is the parent of its wholly-owned subsidiary, defendant Arctic Glacier, Inc. ("Arctic Inc."), which is a Canadian corporation with its principal place of business in 625 Henry Avenue, Winnipeg, Manitoba R3A 0V1.  Arctic Fund is also the parent of defendant Arctic Glacier International, Inc. ("Arctic International"), which is a Delaware corporation with its principal place of business located at 1654 Marthaler Lane, West St. Paul, Minnesota 55118.  Defendants Arctic Inc. and Arctic International are operating companies that manufacture and distribute Packaged Ice.  Hereafter defendants Arctic Fund, Arctic Inc. and Arctic International will be referred to collectively as "Arctic Glacier".  Arctic Glacier manufactures, distributes, and sells Packaged Ice throughout various parts of the United States, including California, the Midwest (Iowa, Kansas, South Dakota, North Dakota, Minnesota, Wisconsin, Missouri, Michigan and Texas), and the Northeast (Maine, New Jersey, New York and Pennsylvania).  Arctic Glacier is the second largest manufacturer of Packaged Ice sold in the United States with sales of almost $200 million per year.

15.     Defendant Home City Ice Company, Inc. ("Home City") is an Ohio corporation with its principal place of business at 6045 Bridgetown Road, Cincinnati, Ohio 45248.  Home

5

City manufactures, distributes, and sells Packaged Ice principally in the upper-Midwest, including Michigan, Illinois, Indiana, Ohio, Pennsylvania, West Virginia, Kentucky and Tennessee. Home City is the third largest manufacturer and distributor of Packaged Ice in the United States with sales of more than $60 million per year.

16. Defendants Reddy Ice, Arctic Glacier and Home City are the only suppliers of Packaged Ice in the United States with the capacity to service large multi-state retail operations such as supermarket chains, mass merchandisers and chain convenience stores. While there is a fringe of small manufacturers of Packaged Ice in certain locations, their sales and capacity are limited, and they lack the ability to substantially compete with defendants in the supply of Packaged Ice.

## THE PACKAGED ICE INDUSTRY

17. Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets, and other retail outlets. The Packaged Ice market within the United States has been estimated by Reddy Ice Holdings, Inc. to be approximately $1.8 billion per annum in 2006.

18. The Packaged Ice market in the United States is dominated by the defendants, and the market share of non-defendant firms that manufacture and distribute Packaged Ice is extremely limited.

19. There are substantial barriers to entry into the Packaged Ice market. In order to serve major customers, a new entrant into the business would have to incur multimillion dollar costs, including manufacturing plant and equipment, energy, transportation, and distribution infrastructure. Because of these high costs, new or small distributors are not able to meet the peak needs of large multistate customers and cannot compete successfully for such customers.

20. There are no close economic substitutes for Packaged Ice.

21. Packaged Ice is a commodity product, which, in a competitive market, would be sold primarily on the basis of price. However, by means of their anticompetitive conduct, defendants have been able to fix, raise, maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at artificially high levels.

22. Because of their dominant market position, defendants have engaged in anticompetitive conduct to prevent other ice companies from competing for their customers on the basis of price. For example, a court in Canada recently found that Arctic Glacier had engaged in conduct violative of Canada's competition law to prevent a smaller ice company in Western Canada from competing with Arctic Glacier to deliver ice to a particular customer. Among other things, the Court found that Arctic Glacier had used intimidation, bribery, and other unlawful means and methods to force the customer to stop seeking competitive prices from the smaller ice company, with the intention of driving that small competitor out of business.

23. Defendants are members of several trade associations relating to the Packaged Ice industry, and their executives have served on the boards of directors and various standing committees of these organizations. These trade associations hold regular meetings of their boards, committees, and members, which defendants' representatives have attended, and which provide the opportunity for defendants to meet and communicate with each other concerning the markets, customers and prices of Packaged Ice.

24. For example, defendants are members of the International Packaged Ice Association ("IPIA"), which is headquartered in Tampa, Florida. Ben Key, Reddy Ice's Executive Vice President – Sales and Marketing, recently served as the Chairman of the IPIA Executive Committee. Nancy Thorn, Director of Marketing at Reddy Ice, and Keith McMahon,

7

President and Chief Executive Officer at Arctic Inc., are members of the IPIA Board of Directors. In addition, Ms. Thorn, Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members of the IPIA Marketing Committee.

25.     IPIA holds meetings of its Board of Directors and Committees, as well as an annual meeting of its members. Representatives of defendants attended such meetings. IPIA's 2006 annual meeting was held on November 23-December 3, 2006 in Tucson, Arizona, and its 2004 annual meeting was held on November 12-17, 2004 in La Quinta, CA.

26.     There are regional trade associations that are affiliated with IPIA, and of which defendants are members. Defendants' representatives have been members of the board of directors or various committees of these regional trade associations. In addition, like the IPIA, these regional trade associations hold regular meetings of their boards, committees and members, which have been attended by defendants' representatives, and which have afforded defendants opportunities to meet and communicate concerning the market, customers and prices of Packaged Ice.

27.     For example, Arctic Glacier and Home City are members and their representatives are officers of the Northeastern Ice Association ("NIA"). Keith McMahon of Arctic Glacier, and Tommy Sedler and Ted Sedler of Home City are members of NIA. Ted Sedler also currently serves as First Vice President and Treasurer of NIA. NIA typically holds meetings of its officers and Board of Directors in the spring and holds its member conventions in the fall. Its Board of Directors meetings have been held in the following locales: Washington, D.C. (2001); Williamsburg, VA (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007). Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT (2002); New Orleans, LA (2003); Atlantic City, NJ (2004);

Montreal, CA (2005); Boston, MA (2006); and Lake George, NY (2007). Representatives of Arctic Glacier and Home City have attended these meetings and conventions.

28. In addition, Arctic Glacier and Reddy Ice are members of the Western Ice Association ("WIA"), which is also affiliated with the IPIA. The WIA's members include William Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as several representatives of Arctic Glacier. WIA also holds periodic meetings of its Board of Directors and committees, as well as annual meetings of its members. Representatives of Arctic Glacier and Reddy Ice have attended these meetings.

## CONSOLIDATION IN THE INDUSTRY

29. The Packaged Ice industry has faced substantial consolidation within the last few years.

(a) Defendant Reddy Ice has continuously purchased small ice companies in various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it purchased an additional twenty ice companies.

(b) Arctic Glacier has purchased numerous smaller ice companies in recent years. For example, in 2003, they acquired the ice division assets of Rosenberger Companies, Ltd. of Blooming Glen, Pennsylvania; they signed a franchising agreement with Creed Ice Co., Inc. of Rutland, Vermont; they acquired the ice division assets of Ice Castles, Inc., a producer and distributor of packaged ice products with manufacturing and distribution facilities in central and western Nebraska; they signed a franchise agreement with packaged ice manufacturer, Getchell Bros. Inc. of Brewer, Maine; they acquired of all of the issued and outstanding common shares of Springdale Ice Company of Mamaroneck, NY, which operates under the name Saxony

9

Ice, and its affiliated company Diamond Ice Cube Company Inc. of Bronx, New York; they acquired Brandywine Ice Company of Twin Oaks, Pennsylvania, a leading manufacturer and distributor of packaged ice in the northeastern U.S; and they acquired the ice division assets of A.T. Reynolds & Sons, Inc. of Kiamesha Lake, New York.

(c)    Arctic Glacier's acquisitions of smaller ice companies has continued into 2006-2007 when they acquired Happy Ice LLC, the largest ice company in upstate New York and six companies collectively known as California Ice, which enabled Arctic Glacier to become the largest Packaged Ice producer in California.

30.    Through acquisitions, defendants have increased their market power and reduced the ability of any other Packaged Ice companies to compete for customers serviced by defendants.

## CLASS ALLEGATIONS

31.    Plaintiff brings this action on his own behalf and as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All individuals or entities (excluding governmental entities, defendants, their parents, predecessors, subsidiaries, affiliates and their co-conspirators) who purchased Packaged Ice in the United States directly from any of the defendants or any predecessor, subsidiary or affiliate thereof at any time during the period from January 1, 2002 to March 5, 2008.

32.    Plaintiff does not know the exact size of the proposed class. However, based upon the nature of the trade and commerce involved, plaintiff believes that the total number of members in the class is in the hundreds or thousands and that members of the class are located throughout the United States. Accordingly, the class members are sufficiently numerous and

geographically dispersed so that joinder of all class members is impracticable.  The identity of all class members can be obtained from information and records in defendants' possession.

33. There are questions of law or fact common to the class, including:

(a) Whether defendants engaged in a combination or conspiracy to allocate the market and customers for Packaged Ice in the United States, and to raise, fix, maintain or stabilize the prices of Packaged Ice sold in the United States;

(b) The duration and extent of the combination or conspiracy alleged herein;

(c) Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act;

(d) Whether defendants took steps to actively conceal the combination or conspiracy from plaintiff and other class members;

(e) Whether defendants' conduct caused the price of Packaged Ice sold in the United States to be artificially high and non-competitive;

(f) Whether plaintiff and members of the class were injured by defendants' conduct, and

(g) the appropriate measure of damages sustained by plaintiff and other members of the class.

34. Plaintiff is a member of the class and plaintiffs' claims are typical of the claims of the class.

35. Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is a direct purchaser of Packaged Ice in the United States during the Class Period and its interests are coincident with, and not antagonistic to, those of the other members of the class.  Plaintiff is

11

represented by counsel who are competent and experienced in the prosecution of antitrust and complex class action litigation.

36.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

37.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

38.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Whatever difficulties may exist in the management of this case as a class action are greatly outweighed by the advantages of that procedure, including but not limited to providing class members with a method for redress of claims that might otherwise not warrant individual litigation.

39.     Finally, the class is readily definable and is one for which records should exist.

## AGENTS

40.     The acts alleged to have been done were authorized, ordered or done by their respective officers, directors, agents, employees or representatives all actively engaged in the management, direction, control or transaction of the corporations' business affairs.

## CO-CONSPIRATORS

41.     Various other persons, firms and corporations, not named in this Complaint have participated as co-conspirators with the defendants in the violations alleged herein.

## **ALLEGED VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT**

42. Plaintiff repeats and incorporates by reference the allegations above as though fully set forth herein.

43. Beginning at least as early as January 1, 2002 and continuing until at least March 5, 2008, the exact dates being currently unknown to plaintiff, defendants entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act.

44. Pursuant to this contract, combination or conspiracy, defendants agreed to allocate territories and customers among them, and to fix, raise, maintain and stabilize prices of Packaged Ice sold in the United States.

45. Defendants implemented this combination or conspiracy, in part, by agreeing not to solicit customers within the geographic areas serviced by the others. Defendants further agreed that, with respect to multistate retailer customers, they would not solicit to supply Packaged Ice to those retailers in areas outside of the areas that were allocated to them pursuant to the combination or conspiracy.

46. As part of their agreement, while defendants have acquired numerous smaller companies in the last few years, they have avoided such acquisitions in territories allocated to another defendant, to prevent the likelihood of competing against each other for customers, which would constitute a violation of the illegal allocation scheme.

47. In addition, pursuant to the combination or conspiracy, defendants have implemented price increases for Packaged Ice sold in the United States. For example, as a result of defendants' anticompetitive conduct, they implemented price increases of approximately 4% in or about May 2002, and again of approximately 4% in or about September 2003. Thereafter,

defendants have raised prices for Packaged Ice by approximately 3-1/2% per annum over the ensuing time period.

48. During the Class Period, increases in input costs do not justify the price increases.

49. For the purpose of formulating and effectuating the aforesaid contract, combination or conspiracy, defendants engaged in anticompetitive activities, the purpose and effect of which would artificially fix, raise, maintain or stabilize the prices for Packaged Ice sold in the United States. Defendants' anticompetitive conduct included:

(a) participating in meetings and conversations, including through trade organizations and at conventions, to discuss the Packaged Ice market in the United States;

(b) agreeing to refrain and in fact refraining from competing among themselves with respect to the sale of Packaged Ice in the United States;

(c) agreeing to allocate customers and territories among them, and to refrain from competing for customers or areas allocated to another defendant;

(d) agreeing to implement price increases for Packaged Ice sold in the United States; and

(e) selling Packaged Ice to plaintiff and members of the class in the United States at supracompetitive prices.

50. The aforesaid contract, combination or conspiracy has had the following effects, among others:

(a) competition in the sale of Packaged Ice by defendants has been restrained, suppressed and eliminated;

(b) prices for Packaged Ice sold by the defendants in the United States have been raised, fixed, maintained or stabilized at artificially high and non-competitive levels; and

(c)     plaintiff and members of the class have been deprived of the benefit of free and open competition in the market for Packaged Ice sold in the United States.

## EQUITABLE TOLLING

51.     Defendants engaged in the successful combination or conspiracy to allocate markets and customers, to raise and fix prices, and to engage in other anticompetitive conduct, which had the effect of increasing prices to an artificially high level, and which by its nature was inherently self-concealing.  Plaintiff had no knowledge of defendants' unlawful combination or conspiracy.

52.     Defendants' wrongful conduct was carried out in part through means and methods which were designed to avoid detection, and which, in fact, successfully precluded detection.

53.     Although plaintiff exercised due diligence throughout the Class Period, it did not and could not have discovered defendants' unlawful combination or conspiracy at any earlier date.  Defendants undertook affirmative acts of concealment of their combination or conspiracy, including their attendance at secret meetings, and engaging in secret conversations concerning the allocation of markets and customers and price increases for Packaged Ice.

54.     In addition, defendants wrongfully concealed their illegal conduct from plaintiff and other members of the class by issuing or causing to be issued public statements which falsely attributed price increases for Packaged Ice to factors other than defendants' illegal scheme and unlawful conduct.

## DAMAGES

55. During the Class Period, plaintiff and each member of the class purchased Packaged Ice directly from defendants and, by reason of the antitrust violations alleged herein, paid more for Packaged Ice than they would have paid in the absence of such anticompetitive conduct. As a result, plaintiff and each member of the class have been injured and damaged in an amount presently undetermined.

56. As a result, the aforementioned conduct has suppressed, restrained and eliminated price competition for Packaged Ice; the price of Packaged Ice has been raised, fixed, maintained and stabilized at artificial and non-competitive levels; and customers of Packaged Ice were deprived of free and open competition in the Packaged Ice market.

## REQUEST FOR RELIEF

57. WHEREFORE, plaintiff respectfully requests that:

(a) The Court certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) The unlawful contract, combination or conspiracy alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(c) Judgment be entered against defendants, jointly and severally, and in favor of plaintiff and the members of the class, for treble damages as allowed by law, together with the costs of suit and reasonable attorneys' fees;

(d) Defendants be enjoined from engaging in the unlawful contract, combination or conspiracy alleged herein, and;

(e)     Plaintiff and the members of the class be awarded such other and further relief as the Court may be deem just under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of all issues so triable in this case.

Dated:  March 26, 2008

**THE MILLER LAW FIRM, P.C.**

By: */s/ Martha J. Olijnyk (P60191)*
E. Powell Miller (P39487)
Martha J. Olijnyk (P60191)
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel.: 248/841-2200
Fax: 248/652-2852
mjo@millerlawpc.com

**QUINN EMANUEL URQUHART OLIVER
    & HEDGES, LLP**
Stephen R. Neuwirth
stephenneuwirth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York  10010
Tel.: 212/849-7165
Fax.: 212/849-7100

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Mel E. Lifshitz
lifshitz@bernlieb.com
Ronald J. Aranoff
aranoff@bernlieb.com
10 East 40th Street, 29th Floor
New York, New York  10016
Tel.: 212/779/1414
Fax.: 212/779-3218

*Attorneys for Plaintiff*